UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELICIA ROSA,

               Plaintiff,

        -against-

CITY OF NEW YORK,

              Defendant.

24-CV-7304 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff proceeds *pro se* and *in forma pauperis*. She filed an original complaint and then an amended complaint as of right. (ECF 1, 8.) By order dated August 5, 2025, the Court held that Plaintiff's amended complaint failed to state a claim but granted Plaintiff leave to replead her claims to address deficiencies identified in the order. Plaintiff filed a second amended complaint (SAC) on September 5, 2025 (ECF 13), and the Court has reviewed it. In the SAC, Plaintiff names the City of New York as the sole defendant. For the reasons set forth below, the Court dismisses Plaintiff's SAC.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the SAC.[1] On or about January 19, 2019, New York City Police Department (NYPD) Officer Mickey, acting with the Administration for Children's Service (ACS), detained Plaintiff in Manhattan and caused her to be hospitalized.[2] She alleges

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

[2] Plaintiff alleged in the original complaint that her uncle told NYPD officers that he wanted Plaintiff and her children "out" and claimed that Plaintiff was intoxicated. (ECF 1 at 10.) NYPD officers took Plaintiff to the hospital, and she was discharged two hours later. (*Id.*)

that this seizure was done without probable cause, a warrant, or any exigent circumstances, and it was therefore unreasonable under the Fourth Amendment.

On or about February 14, 2019, relying on allegedly false testimony from Officer Mickey, ACS removed Plaintiff's children without a court order, notice, or exigent circumstances. Plaintiff contends that the "City of New York maintains a policy or practice of allowing ACS and NYPD officers to detain parents during family investigations without judicial authorization, leading to unlawful seizures such as Plaintiff's [seizure]." (ECF 13 at 1.) She further asserts that the "City of New York maintains a policy or practice of removing children without judicial authorization and reconstructing or falsifying testimony to justify removals after the fact." (*Id.* at 2.)

On December 18, 2024, ACS employee Kiesha Moore admitted in Family Court that she had contacted Plaintiff's landlord and learned of the cancellation of Plaintiff's lease before Plaintiff learned of it.[3] Plaintiff alleges that this interference deprived her of her property interest in her Section 8 voucher and obstructed her efforts to regain custody of her children. Plaintiff contends that these actions violated the Fair Housing Act (FHA), and her rights under the First and Fourteenth Amendments.

Plaintiff alleges that she has been denied a meaningful opportunity to appear before a judge in custody proceedings for more than a year, allegedly due to unspecified "procedural misconduct" by ACS. Plaintiff's custody of the children has not been restored. She further alleges that Defendant City of New York has engaged in harsh, discriminatory treatment against

---

[3] Although the 2019 removal of Plaintiff's children occurred in Manhattan, it appears that the Family Court proceedings are in the Brooklyn Family Court. Nothing in this order prevents Plaintiff from filing a motion in the Family Court proceedings for any relief she is seeking.

her based on her gender, status as a domestic violence survivor, and status as a Section 8 voucher holder.

Plaintiff names the City of New York as the sole defendant in her SAC. She seeks damages and injunctive relief requiring reforms to ACS and NYPD practices.

**DISCUSSION**

**A.    Municipal Liability**

When a plaintiff sues a municipality such as the City of New York under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. Instead, the plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997). A plaintiff may satisfy the policy or custom requirement by alleging any of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such

4

an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff's allegations that employees of ACS and the NYPD violated her rights are insufficient to state a claim against the City of New York. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city.").

Plaintiff invokes three alleged policies of the City of New York: (1) "a policy or practice of allowing ACS and NYPD officers to detain parents during family investigations without judicial authorization" (ECF 13 at 1, ¶7);  (2) "a policy or practice of removing children without judicial authorization and reconstructing or falsifying testimony to justify removals after the fact" (*id.* at 2, ¶ 10); and (3) "a policy or practice of interfering with housing assistance of parents in custody cases as a means of coercion" (ECF 13 at 2, ¶ 14).

Plaintiff's Section 1983 claims against the City of New York all suffer from the same defect: She infers solely from the incident in which she was involved that the City of New York has an unlawful policy or custom. A plaintiff bringing a Section 1983 claim against a municipality need not allege "that the municipality had an explicitly stated rule or regulation." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). The inference that a policy existed may be drawn from circumstantial allegations, such as allegations that "the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its agents were violating citizens' constitutional rights. *Id*. at 61-62. A single act by a municipality may amount to municipal policy "if ordered by a person 'whose edicts or acts may fairly be said to represent official policy.'" *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (quoting *Monell*, 436 U.S. at 694). But a single incident that "involved only actors below the policy-

5

making level, does not suffice to show a municipal policy," *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991), unless a policymaker responds with "inaction [that] amounts to deliberate indifference or to tacit authorization of the offensive acts," *Wilson v. Cnty. of Ulster*, No. 1:20-CV-00104, 2022 WL 813958, at *14 (N.D.N.Y. Mar. 17, 2022); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 128  (1988) (holding that plaintiff's failure to allege relevant conduct "was ever directed against anyone other than himself" supported conclusion City could not be held liable under *Monell*).

First, Plaintiff's allegations that the City of New York has a policy of detaining parents appears to be based solely on her allegations that, in 2019, NYPD Officer Mickey detained her without cause and involuntarily brought her to the hospital. Even accepting this allegation as true for purposes of this order, such an allegation does not suffice to show a policy, as is required for liability on the part of the City of New York.[4]

Second, Plaintiff's allegation that the City of New York is responsible for an ACS policy of "falsifying testimony to justify removals after the fact" is also supported only by her allegation that Officer Mickey testified falsely in Plaintiff's own Family Court proceedings. This single incident, which does not involve a policymaking official, does not suffice to show a municipal policy of falsifying testimony in order to justify removing children from the custody of their parents.

---

[4] Plaintiff contends that her Section 1983 claim arising from her 2019 detention is not barred by the three-year limitations period. She asserts that there is a continuing violation because she continues to suffer harms. However, "the continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that 'cannot be said to occur on any particular day.'" *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-15 (2002). "The mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one." *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005).

Finally, Plaintiff alleges in her SAC that the "City of New York maintains a policy or practice of interfering with housing assistance of parents in custody cases as a means of coercion." (ECF 13 at 2, ¶ 14.) Plaintiff does not point to an explicit policy or one adopted by a policymaker; instead, Plaintiff appears to base her assertion that the City of New York has a policy of "housing interference" solely on her interpretation of her own experience, which is insufficient. Plaintiff thus fails to state a claim on which relief may be granted under Section 1983 against Defendant City of New York arising from her 2019 detention, removal of her children from her custody, and changes in her housing, and the Court dismisses these claims. 28 U.S.C. § 1915(e)(2)(B)(ii).

While Plaintiff's failure to allege a policy, custom, or practice on the part of the City of New York disposes of all of her Section 1983 claims against the City of New York, the Court also specifically addresses below Plaintiff's claims for alleged violations of her rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses.

**B.     Fourteenth Amendment**

**1.     Equal Protection**

"Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994). This is particularly true where the discrimination "serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *Id.* at 131.

To state claims for equal protection violations based on sex, a plaintiff must allege that a government actor's discriminatory intent was a "motivating factor." *Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577 F.3d 415, 438 (2d Cir. 2009). A plaintiff can do so by pleading facts showing that a facially neutral law was applied in a discriminatory fashion, *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886), or by "pointing to animus on the part of individual" state

actors, or to a pattern of failing to adequately serve members a protected class, *see, e.g.*, *White v. City of New York*, 206 F. Supp. 3d 920, 932 (S.D.N.Y. 2016) (noting that a plaintiff plausibly alleged discriminatory intent based on allegations that officers' reactions to learning of a plaintiff's transgender status "included gawking, giggling, and inquiring about his genitalia"). An allegation of the government's failure to provide adequate services in a single case involving a member of a protected class, however, will not, on its own, suffice to state a claim. *Id*. at 931 (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)).

Plaintiff alleges that "[a]s a woman, domestic violence survivor, . . . , Plaintiff was subjected to discriminatory and harsher treatment by ACS and NYPD than similarly situated individuals." (ECF 13 at 2.) Plaintiff's amended complaint does not include any facts that could give rise to an inference that similarly situated men, or individuals who had not experienced domestic violence, were treated differently. There are also no facts in the amended complaint suggesting how Plaintiff's sex, or status as a domestic violence survivor, was a motivating factor in how she was treated.

In *Nicholson v. Scoppetta*, 116 F. App'x 313, 315 (2d Cir. 2004), for example, plaintiffs successfully challenged a then-existing ACS practice of removing children based solely on a finding that the custodial parent was a victim of domestic violence and that the children had witnessed such violence. By contrast, here, Plaintiff alleges that her children were removed from her custody based on Officer Mickey's unspecified false testimony in the Family Court. The SAC includes no facts that could give rise to an inference that domestic violence against Plaintiff was a motivating factor in removal of her children. The conclusory assertions in Plaintiff's SAC that she was treated differently based on domestic violence status and sex, which are unsupported by any factual allegations, are insufficient to allege a violation of her rights under

the Equal Protection Clause. This claim in the SAC must therefore be dismissed. 28 U.S.C.
§ 1915(e)(2)(B)(ii).

### 2.    Due Process Rights

Plaintiff's allegations are also insufficient to state a claim, under Section 1983, for a
violation of her due process rights. "The two threshold questions in any [Section] 1983 claim for
denial of procedural due process are whether the plaintiff possessed a liberty or property interest
. . . and, if so, what process was due before plaintiff could be deprived of that interest." *Green v.
Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *see also Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir.
1998) (to state a procedural due process claim under Section 1983, a plaintiff must "demonstrate
that he possessed a protected liberty or property interest, and that he was deprived of that interest
without due process of law").

Section 8 housing benefits are property interests subject to procedural due process
protections. *See A.S. v. Been*, 228 F. Supp. 3d 315, 317 (S.D.N.Y. 2017) ("A termination of
[Section 8 voucher payments] or voucher holders' participation in the program constitutes a
deprivation [of property interests] that would entitle them to procedural safeguards."); *Hardee v.
City of New Rochelle Section 8 Hous. Agency*, No. 18-CV-11215 (VB), 2019 WL 3564550, at *4
(S.D.N.Y. Aug. 6, 2019) (same).

When evaluating whether the process that a plaintiff received satisfied the Constitution,
courts distinguish between claims based on established state procedures and claims based on
random, unauthorized acts by state employees. *Hellenic Am. Neighborhood Action Comm. v.
City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). If the deprivation is based on "established
state procedure," the state can typically predict when it will occur and must offer a pre-
deprivation hearing. *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).

If the deprivation is random and unauthorized, the existence of a meaningful post-deprivation remedy satisfies due process. *Rios v. Town of Huntington Hous. Auth.*, 853 F. Supp. 2d at 338.

In her SAC, Plaintiff alleges the following:

On December 18, 2024, ACS employee Kiesha Moore admitted in court that she contacted Plaintiff's landlord without consent and learned of Plaintiff's lease cancellation before Plaintiff was notified. This interference with Plaintiff's Section 8 housing voucher deprived her of property and obstructed her custody efforts.

(ECF 13 at 2, ¶¶11-12.) Plaintiff thus alleges that she was deprived of her property (her Section 8 housing voucher) by ACS employee Moore's actions, not established procedure.[5]

Federal regulations governing Section 8 Housing Vouchers require public housing agencies to provide administrative hearings, including before "[a] determination to terminate assistance for a participant family because of the family's action or failure to act," and before "[a] determination to terminate assistance because the participant family has been absent from the assisted unit for longer than the maximum period permitted . . . ." 24 C.F.R. § 982.555. Under New York law, Article 78 proceedings are a proper vehicle to review administrative decisions, N.Y. C.P.L.R. §§ 7803, 7804. *See also Locurto v. Safir,* 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims."); *Campo v. New York City Employees' Ret. Sys.,* 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 'provides the mechanism for challenging a specific decision of a state administrative agency.'"). These procedures provide an avenue for pre- and post-deprivation relief in connection with the termination of a Housing Voucher, and Plaintiff makes no allegation

---

[5] In Plaintiff's original complaint, she alleged that "the Paterson and Albany Housing Authorities were negligent in processing Plaintiff's housing voucher, failing to provide the necessary paperwork, and allowing her voucher to expire unlawfully." (ECF 1 at 10.)

that these established procedures are inadequate. Plaintiff thus fails to state a claim that she was deprived of her Section 8 Housing Voucher without due process in violation of the Fourteenth Amendment.

## C.    Fair Housing Act

The FHA "broadly prohibits discrimination in housing," *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979), including discrimination based on an individual's race, color, religion, sex, familial status, national origin, or disability, 42 U.S.C. § 3604(a), (f)(1). Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that (1) she is a member of class of individuals protected under the FHA; (2) she suffered "adverse treatment"; and (3) the defendant discriminated against her based on her protected classification. *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (internal quotation marks omitted)).

Plaintiff alleges no facts to support her contention that Defendant took any adverse action against her in connection with her housing based on her sex or membership in any other protected class. Plaintiff alleges that ACS employee Kiesha Moore admitted in Family Court proceedings that she had contacted Plaintiff's landlord and learned of the cancellation of Plaintiff's lease before Plaintiff learned of it. Plaintiff further alleges that the City has a practice of interfering with the housing assistance of parents involved in custody cases—such as disrupting Section 8 vouchers—as a means of coercion. These allegations, which do not refer to any facts beyond Plaintiff's own situation, are insufficient to allege that she suffered adverse treatment based on a protected classification in violation of the FHA. Plaintiff's SAC thus fails to state a claim for a violation of her rights under the FHA, and such claim must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

11

**D.      State Law Claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff's SAC gives no indication that the defects can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

Plaintiff's federal claims are dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of any state law claims.

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:    March 2, 2026
             New York, New York

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.

13